UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


LLOG EXPLORATION OFFSHORE,                    CIVIL ACTION
INC.

VERSUS                                        NO: 05-1197

HUNT PETROLEUM CORPORATION                    SECTION: "R"(3)
and PINNACLE ENGINEERING,
INC.


ORDER AND REASONS

Defendant Hunt Petroleum Corporation moves to stay or
dismiss plaintiff LLOG Exploration Offshore, Inc.'s claims
pending arbitration and to compel arbitration.  For the following
reasons, the Court GRANTS Hunt's motion.

I.    BACKGROUND

On July 9, 2004, plaintiff LLOG Exploration Offshore, Inc.
and defendant Hunt Petroleum Corporation entered into a Purchase
and Sale Agreement.  Under the Purchase and Sale Agreement, Hunt
agreed to purchase certain assets from LLOG, including a number
of offshore oil and gas leases on acreage in South Pass Block

42/43 in the Gulf of Mexico.  Hunt also agreed to purchase all

equipment, facilities and contracts related to the offshore

leases.  The Purchase and Sale Agreement contains an arbitration

clause, which provides, in pertinent part:

> Arbitration.  All disputes arising out of, or
> in connection with, this Agreement . . . or
> any determination required to be made by
> Buyer and Seller as to which the parties
> cannot reach an agreement shall be settled by
> arbitration in Houston, Texas.  Any matter to
> be submitted to arbitration shall be
> determined by a panel of three (3)
> arbitrators, unless otherwise agreed by the
> parties. . . .

(Def. Mem. Ex. B, § 14.12).

As part of the sale, Hunt acquired a caisson well protector,

which was to be used in connection with certain wells in South

Pass Block 42/43.  The caisson was intended to encase three

existing wells as part of an offshore oil and gas production

facility.  LLOG alleges that defendant Pinnacle Engineering, Inc.

designed and engineered the caisson.  The caisson was under

construction as of the date of the Purchase and Sale Agreement,

and LLOG alleges that Pinnacle worked on the caisson both before

and after LLOG sold it to Hunt.

On February 18, 2005, Hunt informed LLOG that the caisson

was defectively designed and unfit for its intended use.  Among

other things, Hunt contended that LLOG failed to disclose survey

results that would have shown that the caisson was defectively designed.  By letter dated March 17, 2005, Hunt demanded arbitration with LLOG under section 14.12 of the Purchase and Sale Agreement and asserted claims for breach of contract, redhibition, negligent misrepresentation and detrimental reliance.  On March 24, 2005, LLOG filed this action in Louisiana state court, naming Hunt and Pinnacle as defendants.  LLOG seeks a declaratory judgment that, *inter alia*, it is not liable to Hunt for the allegedly defective design of the caisson, that it breached no duty to Hunt in connection with the sale, that any alleged design defect is the fault of Pinnacle, who is therefore liable to Hunt, that LLOG is entitled to indemnification and/or contribution from Pinnacle if it is found liable to Hunt, and that Pinnacle breached its duty to, and is liable to, LLOG for the allegedly defective design.

Hunt removed the action to this Court on March 30, 2005. Hunt now moves to stay or dismiss the action and to compel arbitration under section 14.12 of the Purchase and Sale Agreement.  LLOG opposes the motion on the grounds that the Court does not have subject matter jurisdiction and that it did not agree to arbitrate this dispute.

## II.  DISCUSSION

### A.  Subject Matter Jurisdiction

Before it considers the merits of Hunt's motion, the Court must first determine whether it has subject matter jurisdiction over this action.  Hunt's motion falls under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, but the FAA does not itself create subject matter jurisdiction.  *See Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 163 n.1 (5th Cir. 1998) ("It is well-established that the Federal Arbitration Act does not create federal jurisdiction.").  The Court must therefore have an independent basis for subject matter jurisdiction.

This action was originally filed in Louisiana state court, and it is before this Court by way of removal.  A defendant can remove a state court action to federal court only if the federal court has original jurisdiction over the action.  *See* 28 U.S.C. § 1441(a).  If the claim is founded on "the Constitution, treaties or laws of the United States," it is "removable without regard to the citizenship or residence of the parties."  *Id*. § 1441(b).  Otherwise, removal is appropriate only if no defendant is "a citizen of the state in which the action is brought."  *Id*.  The removing party bears the burden of showing that federal jurisdiction exists.  *See Allen v. R & H Oil & Gas Co.*, 63 F.3d

4

1326, 1335 (5th Cir. 1995).  Here, Hunt asserts that jurisdiction is proper on the basis of both diversity of citizenship and the Outer Continental Shelf Lands Act.

    *1.  Diversity of Citizenship*

Hunt removed this action to federal court on the basis of diversity of citizenship.  LLOG is a Louisiana corporation.  Hunt is a Delaware corporation with its principal place of business in Dallas, Texas, and Pinnacle is a Texas corporation with its principal place of business in Texas.  LLOG concedes that, as the parties are currently aligned, complete diversity exists because it is diverse from each of the defendants.  LLOG argues, however, that diversity is lacking because Pinnacle should be realigned with LLOG as a plaintiff for jurisdictional purposes.  If Pinnacle were aligned as a plaintiff, Pinnacle and Hunt — both citizens of Texas for diversity purposes — would be on opposite sides of the action, and diversity would be destroyed.  *See, e.g., Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1178 n.6  (5th Cir. 1984) ("[A] lack of diversity by way of state of incorporation or state of principal place of business defeats jurisdiction under section 1332(a)(1).").

When federal jurisdiction is premised on diversity of citizenship, the Court must ascertain whether there is "an actual, substantial controversy between citizens of different

states." *Zurn Indus., Inc. v. Acton Constr. Co.*, 847 F.2d 234, 236 (5th Cir. 1988) (citing *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941)).  To make that assessment, "a court must 'look beyond the pleadings, and arrange the parties according to their sides in the dispute.'"  *Id.* (citing *City of Indianapolis*, 314 U.S. at 69).  The Court determines whether the parties are properly aligned on the basis of the plaintiff's "principal purpose for filing its suit."  *Id.* at 237; *Lowe*, 723 F.2d at 1178.  "First, the court examines the primary or original purpose for filing suit.  If the parties are not realigned on that claim, and there is no showing that the claim was a sham simply asserted for federal jurisdiction, subject matter jurisdiction exists."  *Zurn Indus., Inc.*, 847 F.2d at 237.

LLOG argues that the primary purpose of its suit is to dispute Hunt's allegation that the caisson was defectively designed or unfit for its intended purpose.  LLOG asserts that because Pinnacle's interests are aligned with its interests on this issue, Pinnacle should be realigned as a plaintiff.

LLOG's argument relies on an overly narrow reading of the complaint.  The primary purpose of LLOG's suit is not simply to contest Hunt's allegation that the caisson was defectively designed, but rather to escape liability to Hunt for whatever reason.  In fact, LLOG's complaint consists primarily of

6

allegations directed at establishing that it is not liable to Hunt even if the caisson were defectively designed or unfit for its intended purpose.  (*See, e.g.*, Def. Mem. Ex. A, ¶ 6 (alleging that all materials in LLOG's possession concerning the caisson were inspected by Hunt prior to closing); *id.* ¶ 7 (alleging that Hunt assumed responsibility for design and construction of caisson as of effective date of the Purchase and Sale Agreement); *id.* ¶ 11 (alleging that LLOG expressly disclaimed all warranties concerning assets sold to Hunt); *id.* ¶ 13 (alleging that LLOG did not owe or breach any duty to Hunt for the allegedly defective design)).  Although LLOG no doubt disputes Hunt's allegation that the caisson was defectively designed, the Court cannot conclude that refuting that allegation is the "primary purpose" of this action.

Here, it is apparent that LLOG has an "actual, substantial controversy" with Pinnacle in the declaratory judgment action. *Zurn Indus., Inc.*, 847 F.2d at 236.  Pinnacle's interests may well be aligned with LLOG's interests insofar as LLOG asserts that the caisson was not defectively designed.  But the complaint also seeks a declaration that Pinnacle, not LLOG, is primarily liable to Hunt for any design defect (*see* Def. Mem. Ex. A, ¶ 14), that Pinnacle breached its duty to LLOG in connection with the allegedly defective design (*see id.* ¶ 15), and that LLOG is

7

entitled to indemnification or contribution from Pinnacle for any liability it may have to Hunt. (*See id.* ¶ 16). Thus, except for the question of whether the caisson was defectively designed, LLOG's interests are far from aligned with Pinnacle's interests. LLOG seeks relief against both Hunt and Pinnacle, and its allegations show that it has an actual and substantial dispute with each party in the declaratory judgment action.

That the liability of either LLOG or Pinnacle to Hunt may be contingent upon a determination that the caisson was defectively designed or unfit for its intended purpose does not require realignment. Realignment is not mandated simply because a defendant's interests coincide with the plaintiff's interests on a subset of the plaintiff's allegations. In *Zurn Industries, Inc.*, *supra*, a subcontractor filed an action seeking $900,000 for extra work in attempting to repair a ruptured drain during the construction of a sewage treatment plant for the city of Garland, Texas. Plaintiff sued three parties on three different theories: (i) the city, on the ground that its operations caused the rupture; (ii) the plant's design engineer, on the ground that its design error was responsible for the rupture; and (iii) the general contractor, on contract grounds. 847 F.2d at 235-36. The city had filed a separate action challenging the design of the plant. The court reversed the trial court's decision that

8

realigned the city as a plaintiff.  In applying the "primary purpose" test to determine whether any of the parties should have been realigned, the Fifth Circuit focused on the plaintiff's claim as a whole, not on individual allegations or particular theories of recovery:

> The principal claim here is Zurn's claim for almost $900,000 for extra work.  That claim continues to exist.  It is a *bona fide* claim, as all parties admit . . . .  On that claim, none of the parties should be realigned under *City of Indianapolis*.  Zurn has a legitimate dispute with URS, Garland and Acton.

*Id.* at 237.  *Compare Lowe*, 723 F.2d at 1173 (realignment appropriate when regardless of court's decision on request for declaratory judgment, "both Owens-Corning and plaintiffs are on one side of the dispute, taking identical positions").  As in *Zurn Industries, Inc.*, LLOG has an actual dispute with both defendants, Hunt and Pinnacle, and realignment is therefore inappropriate.  Accordingly, the Court has diversity jurisdiction over this action.

> 2.   *The Outer Continental Shelf Lands Act*

The Court also has jurisdiction over this case under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq.* ("OCSLA").  OCSLA was enacted in 1953 to extend the jurisdiction and control of the United States government to the seabed and subsoil of the outer Continental Shelf and to its natural

resources.  *See Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844
F.2d 1202, 1205 (5th Cir. 1988).  Under the statute, the federal
government exercises control over the lands of the outer
Continental Shelf "to the same extent as if the outer Continental
Shelf were an area of exclusive Federal jurisdiction located
within a state."  43 U.S.C. § 1333(a)(1).  Among other things,
OCSLA reserves to the federal government the exclusive right to
issue leases for the development of the natural resources of the
outer Continental Shelf.  *See Amoco Prod. Co.*, 844 F.2d at 1205.
Thus, OCSLA is "an assertion of national authority at the expense
of both foreign governments and the governments of the several
states."  *Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*, 87
F.3d 150, 153 (5th Cir. 1996).

To facilitate its statutory purposes, OCSLA created an
exclusive body of federal law to govern the outer Continental
Shelf.  *See Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340,
349 (5th Cir. 1999).  Because federal statutory law may in some
areas be inadequate to cover the full range of legal problems
that can arise in connection with operations on the outer
Continental Shelf, OCSLA incorporates state law as "'surrogate
federal law'" when the state law is not inconsistent with OCSLA.
*Hufnagel*, 182 F.3d at 349.  OCSLA also contains a broad
jurisdictional grant, which gives federal courts jurisdiction

10

over all cases "arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf."  43 U.S.C. § 1349(b)(1).

If LLOG's claims fall under OCSLA's jurisdictional grant, there is no question that removal was proper in this case.  *See, e.g.*, *Hufnagel*, 182 F.3d at 349 (removal proper under OCSLA); *Amoco Prod. Co.*, 844 F.2d at 1205-05 (same).  As a prerequisite to jurisdiction under OCSLA, there must be an "operation" on the outer Continental Shelf involving the exploration, development or production of minerals.  *See* 43 U.S.C. § 1349(b)(1).  This threshold jurisdictional fact is absent from LLOG's complaint, which omits any reference to OCSLA or the outer Continental Shelf, but the Court may look beyond the complaint to determine the existence of jurisdictional facts.  *See Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996) ("In making a jurisdictional assessment, a federal court is not limited to the pleadings; it may look to any record evidence . . . .").  Moreover, although the removability of actions arising under federal law is generally determined solely from the allegations of the plaintiff's well-pleaded complaint, the well-pleaded complaint rule does not prevent the Court from looking beyond the face of

11

the complaint in this case because OCSLA provides a jurisdictional basis independent of the Court's federal question jurisdiction. *See Amoco Prod. Co.*, 844 F.2d at 1205 ("In determining federal court jurisdiction, we need not traverse the Serbonian Bog of the well pleaded complaint rule . . . because § 23 of OCSLA expressly invests jurisdiction in the United States District Courts." (internal citation omitted)). *See generally Rivet v. Regions Bank of La.*, 522 U.S. 470, 474 (1998) (well-pleaded complaint rule governs existence of "federal question").

The caisson was designed to encase a number of wells as part of an offshore production facility. In its notice of removal, Hunt asserts that two of the existing wells that the caisson was intended to encase are located on federal leases on the outer Continental Shelf. (*See* Notice of Removal at 4-5). LLOG does not dispute this assertion. The Court therefore finds that there is an "operation" on the outer Continental Shelf involving the production of minerals as required by section 1349(b). The parties dispute, however, whether LLOG's claims arise out of, or are connected with, that operation for the purpose of OCSLA jurisdiction. *See* 43 U.S.C. § 1349(b)(1).

The Fifth Circuit interprets the jurisdictional grant of section 1349(b) expansively. *See EP Operating Ltd. P'ship v.*

12

*Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994).  For example, in *United Offshore Co. v. S. Deepwater Pipeline Co.*, 899 F.2d 405 (5th Cir. 1990), it held that contract disputes will give rise to federal jurisdiction under OCLSA if they have a "nexus with production" on the outer Continental Shelf.  *Id.* at 407.  In that case, the Fifth Circuit found OCSLA jurisdiction over a suit to enjoin arbitration of a dispute about the management procedures of a joint venture that operated an offshore oil pipeline.  *Id.* at 406-07.  Although the court acknowledged that the dispute was "one step removed from the actual transfer of minerals to shore," it nonetheless held that jurisdiction existed under section 1349(b) because the dispute would "affect the exploitation of minerals on the outer continental shelf."  *Id.* at 407; *Amoco Prod. Co.*, 844 F.2d at 1210 (OCSLA provides jurisdiction over "any dispute that alters the progress of production activities on the OCS"); *see also EP Operating Ltd. P'ship*, 26 F.3d at 569-70 (federal courts had jurisdiction over action for partition of unused offshore facilities because it would "affect the efficient exploitation of resources from the OCS and/or threaten the total recovery of federally-owned resources").

This action likewise bears a sufficient "nexus" to production to fall within section 1349(b)'s jurisdictional grant. LLOG seeks a declaratory judgment concerning its sale to Hunt of

an allegedly defective caisson well protector that was designed
to be part of an offshore oil and gas production facility that
was to produce resources originating in the subsoil of the outer
Continental Shelf.  A dispute concerning the design of the
caisson could delay the planned production of those resources.
*See BP Exploration & Prod. Co. v. Callidus Techs.*, No. Civ.A. 02-
2318, 2003 WL 193450, at *4 (E.D. La. Jan. 27, 2003) (OCSLA
jurisdiction proper in design defect case; "Surely, the failure
of a piece of equipment on the platform site has more potential
to affect production than a property dispute or an arbitration
proceeding.").  This is true whether or not, as LLOG argues, the
resolution of the dispute turns on questions of contract
interpretation.   In light of the Fifth Circuit's broad
interpretation of section 1349(b), the Court finds that it has
jurisdiction over this case under OCSLA.

**B.   Hunt's Motion to Stay LLOG's Claims Pending Arbitration**

Hunt seeks an order staying or dismissing LLOG's claims
against it pending arbitration under section 14.12 of the
Purchase and Sale Agreement.

There is a "strong federal policy in favor of enforcing
arbitration agreements."  *Dean Witter Reynolds, Inc. v. Byrd,* 470
U.S. 213, 217 (1985).  Section 3 of the FAA provides:

If any suit or proceeding be brought in any

14

> of the courts of the United States upon any
> issue referable to arbitration . . . the
> court . . . shall on application of one of
> the parties stay the trial of the action
> until such arbitration has been had in
> accordance with the terms of the agreement
> . . . .

9 U.S.C. § 3.  Upon a motion by either party to stay the action
pending arbitration under section 3 of the FAA, the district
court must "'first determine whether there is a written agreement
to arbitrate between the parties, and then whether any of the
issues raised are within the reach of the agreement.'"  *Texaco
Exploration & Prod. Co. v. AmClyde Eng'red Prods. Co.,* 243 F.3d
906, 909 (5th Cir. 2001) (quoting *Midwest Mech. Contractors, Inc.
v. Commonwealth Constr.,* 801 F.2d 748, 750 (5th Cir. 1986)).  If
a valid arbitration agreement exists, and the parties' dispute is
within the scope of that agreement, then the Court must stay the
action pending arbitration.  *Id.*  In making this determination,
the Court does not consider the merits of the underlying case.
*See Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir.
2002).  Any doubts concerning whether a claim is arbitrable
"should be resolved in favor of arbitration."  *Id.* (citing
*Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)).

As a preliminary matter, LLOG questions the applicability of
the FAA because the Purchase and Sale Agreement contains a
choice-of-law clause, which provides for the application of
Louisiana law.  (*See* Def. Mem. Ex. B, § 14.09).  The choice-of-

law clause contained in the Purchase and Sale Agreement is general in nature and makes no reference to state arbitration law. (*See id.*). It is true that parties may, in effect, opt-out of the FAA's provisions and choose to have their arbitration clause governed by state law. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56 (1995); *Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 141 F.3d 243, 247 (5th Cir. 2001). But, to accomplish this result, the parties must express clearly their intention to do so. *Action Indus., Inc. v. United States Fid. & Guar. Co.*, 358 F.3d 337, 341 (5th Cir. 2004) ("FAA rules apply absent clear and unambiguous language to the contrary."). A general choice-of-law clause such as section 14.09 of the Purchase and Sale Agreement is insufficient to show that the parties intended for state law to govern their arbitration clause. *See Mastrobuono*, 514 U.S. at 59-60, 63-64 (general choice-of-law clause in contract did not incorporate state arbitration law); *Action Indus., Inc.*, 141 F.3d at 342 ("[A] choice-of-law provision is insufficient, by itself, to demonstrate the parties' clear intent to depart from the FAA's default rules."). Accordingly, the FAA governs the interpretation of section 14.12 of the Purchase and Sale Agreement.

Under section 14.12, LLOG and Hunt agreed to arbitrate all disputes "arising out of, or in connection with" the Purchase and

Sale Agreement.  This is an archetypal "broad" arbitration clause.  *See Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998); *Nauru Phosphate Royalties, Inc.*, 138 F.3d at 165.  Courts interpret such broad arbitration clauses to require arbitration of all disputes that "'touch' matters covered by the [contract]." *Pennzoil Exploration & Prod. Co.*, 139 F.3d at 1068.  Here, LLOG expressly bases its claims on specific provisions of the Purchase and Sale Agreement.  (*See, e.g.*, Def. Mem. Ex. A, ¶¶ 10-11) (alleging that Hunt warranted that it had conducted due diligence on the assets and that LLOG disclaimed all warranties).  Its claims therefore clearly "touch" matters related to the Purchase and Sale Agreement.

LLOG nonetheless argues that it did not agree to arbitrate this dispute *because* it expressly disclaimed all warranties concerning the assets sold, including the caisson, under the Purchase and Sale Agreement.  LLOG asserts that it cannot be compelled to arbitrate a "false or illusory dispute" that is clearly barred by the terms of the contract itself.  (*See* Pl. Reply Mem. at 6).  This argument goes directly to the merits of the dispute, not to whether the dispute is encompassed by the arbitration clause, and the Court will not consider it.  *See Primerica Life Ins. Co.*, 304 F.3d at 471 ("If the dispute is

17

within the scope of the arbitration clause, the court may not delve further into the merits of the dispute." (quotation marks omitted)).  Because LLOG's claims against Hunt are within the scope of the parties' arbitration agreement, the Court will stay those claims pending arbitration.

### C.  Hunt's Motion to Stay LLOG's Claims Against Pinnacle

Hunt also asks the Court to stay LLOG's claims against Pinnacle.  Hunt acknowledges that Pinnacle, as a nonparty to the Purchase and Sale Agreement, cannot be compelled to arbitrate. Hunt asserts that the Court should nonetheless stay LLOG's claims against Pinnacle pending the outcome of arbitration between LLOG and Hunt.

As a general rule, the mandatory stay provided by section 3 of the FAA applies only to parties to the arbitration agreement. *See Adams v. Georgia Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001).  The Fifth Circuit has, however, held that the stay can apply to nonparties under certain circumstances, such as when claims not referable to arbitration "are based on the same operative facts and are inherently inseparable from" the arbitrable claims, *Harvey v. Joyce*, 199 F.3d 790, 795 (5th Cir. 2000), or when allowing the litigation to proceed would adversely affect a party's right to arbitrate.  *Id.* at 796; *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999).

18

Here, LLOG's claims against Pinnacle are based on the same operative facts as LLOG's claims against Hunt.  In each case, a significant issue is whether the caisson was defectively designed.  Allowing LLOG to proceed against Pinnacle in this Court while its arbitration with Hunt is pending would create the possibility of inconsistent decisions.  Moreover, LLOG's claims against Pinnacle include claims for indemnification and contribution, which are inherently derivative of LLOG's liability to Hunt.  Under these circumstances, a stay of LLOG's claims against Pinnacle pending the outcome of arbitration between LLOG and Hunt is proper.  *Harvey*, 199 F.3d at 795-96; *see also Odell Assocs. v. Alton Ochsner Med. Found.*, No. 01-964, 2001 U.S. Dist. LEXIS 22071, at *6-8 (E.D. La. Dec. 31, 2001) (stay of claims involving nonparties to arbitration agreement appropriate when common questions of fact likely to be resolved in arbitration; "Even without statutory authority [under the FAA] . . . this Court may stay the litigation pursuant to its inherent power to control its docket.").

### D.  Hunt's Motion to Compel Arbitration

Finally, Hunt seeks an order compelling LLOG to submit to arbitration in Houston, Texas as provided in section 14.12 of the Purchase and Sale Agreement.  Section 4 of the FAA permits district courts to enter an order "directing the parties to

proceed to arbitration in accordance with the terms of the agreement," and it provides that the "hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."  9 U.S.C. § 4.  Although this language can be read to prevent this Court from compelling arbitration outside of this judicial district, the Fifth Circuit has held that district courts may compel arbitration in other judicial districts under certain circumstances, including when a party seeking to avoid arbitration files suit in a judicial district other than the district where the arbitration is to be conducted.  *See Dupuy-Busching Gen. Agency*, 524 F.2d 1275, 1278 (5th Cir. 1975); *Automated Tech. Machs., Inc. v. Diebold, Inc.*, No. Civ.A. 01-2777, 2002 WL 1009471, at *3 (E.D. La. May 15, 2002).

Section 14.12 of the Purchase and Sale Agreement provides for arbitration in Houston, Texas.  LLOG filed its declaratory judgment action in Louisiana state court only after Hunt had demanded arbitration of the parties' dispute, and LLOG continues to resist arbitration.  The Court finds that this is a case in which it is appropriate to compel LLOG to submit to arbitration in Houston, Texas, as provided for in section 14.12.  *See Automated Tech. Machs., Inc.*, 2002 WL 1009471, at *3 (ordering arbitration in Ohio in accordance with terms of parties'

20

arbitration agreement).

**III. CONCLUSION**

For the reasons stated above, the Court grants Hunt's motion to stay LLOG's claims against it pending arbitration and orders LLOG to submit to arbitration under section 14.12 of the Purchase and Sale Agreement.  The Court also stays LLOG's claims against Pinnacle pending completion of the arbitration between LLOG and Hunt.

New Orleans, Louisiana, this  __25th__  day of August, 2005

_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE